UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|     HEUNGKEE KIM ) | Case No. 08-10384-SSM |
|     JUYANG L. KIM ) | Chapter 7 |
| ) | |
|                Debtors ) | |
| ) | |
| SUN KI KIM ) | |
| ) | |
|                Plaintiff ) | |
| ) | |
| vs. ) | Adversary Proceeding No. 08-1126 |
| ) | |
| HEUNGKEE KIM, *et al.* ) | |
| ) | |
|                Defendants ) | |

**MEMORANDUM OPINION**

Before the court is the plaintiff's motion for summary judgment determining that a state court judgment against the defendants for $125,000.00 and attorneys fees is excepted from discharge. A hearing was held on July 1, 2008. The defendants appeared in person and represented themselves. At the conclusion of the hearing, the court took the issues under advisement. For the reasons stated, the motion for summary judgment will be granted.

Background

The defendants, Heungkee Kim and Juyang L. Kim, are husband and wife. They filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on January 28, 2008, and received a discharge of their dischargeable debts on May 12, 2008. The plaintiff, Sun Ki Kim, obtained a judgment against the debtors on January 8, 2008, in the Circuit Court of

Fairfax County, Virginia, on a three-count complaint alleging breach of contract, conversion, and fraud.[1]  Specifically, the complaint alleged that the debtors, acting as FSC Consulting Co., as brokers for the sale of an Exxon gas station to the plaintiff, received a $100,000 deposit that was to be held in escrow but failed to return it after the plaintiff exercised his contractual right to cancel the contract.  The contract, which is dated April 5, 2006 and which is signed by Mr. Kim as "Principal Broker," stated that the $100,000 earnest money deposit was "to be held in escrow by FSC Consulting Co. until settlement."  The check was made payable to "FSC Consulting Co." and was annotated "honest [*sic*] money Escrow deposit."  After the purchaser was unable to obtain loan approval, he then invoked a contingency clause in the contract and requested return of the $100,000 earnest money deposit.

After the state court action was commenced, the debtors, although responding to interrogatories and document requests, failed for whatever reason to respond to requests for admission.  These included requests, addressed separately to Mr. and Mrs. Kim, asking them to admit that they were each owners of FSC Consulting Corporation; that FSC Consulting Corporation was not a valid corporation and was not authorized to conduct business in Virginia; that the address of the business was their home; that the business did not maintain the $100,000 deposit in a separate escrow account; that the $100,000 earnest money deposit was diverted to Mr. Kim's personal account; and that Mr. Kim had spent "all or a portion" of the earnest money deposit.  The state court, taking the requests as admitted, entered summary judgment against the debtors (who at that point were proceeding *pro se*) on all three counts on December 14, 2007, with damages to be determined at a later hearing.  At the damages hearing, judgment was entered

---

[1] The debtors are named in the state court action as Heung Kee Kim and Juyang L. Serv.

against the debtors (who by this time were represented by counsel) in the amount of $100,000 in compensatory damages, $25,000 in punitive damages, and $27,991.87 in attorneys fees.

In their answer filed in this action, the debtors stress that "defendant"[2] worked hard to obtain the contract for the plaintiff and they deny that the contract was contingent upon the purchaser obtaining lease approval from Exxon.  At oral argument on the summary judgment motion, the debtors also denied that Ms. Kim had any involvement in the transaction.  In support of this argument, the debtors filed after the hearing copies of documents showing that "Future Space Creation Company" was registered with the Virginia Employment Commission as an "individual" business consisting of Heungkee Kim and that Prince William County had issued a business license to "Future Space Creation," which is shown as being owned by "Kim Heung Kee."[3]  The debtors do not deny that the $100,000 earnest money deposit has been spent; rather their position, as articulated at the summary judgment hearing, seems to be that the deposit had been fully earned as a commission when the contract was signed and was not contingent on the sale being consummated.

<u>Discussion</u>

I.

A chapter 7 discharge discharges an individual debtor from all debts except those listed in § 523(a), Bankruptcy Code.  Among the debts excluded from discharge are the following:

---

[2] Because the debtors' English is not perfectly fluent, it is unclear from the context whether "defendant" is a reference to both of them or solely to Mr. Kim.

[3] The business activity of Future Space Creation Company is stated to be "Residential Remodelers" and that of "Future Space Creation" as "Contractor Builder Developer Building."

  (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—
    (a) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
    (b) use of a statement in writing—
      (i) that is materially false;
      (ii) respecting the debtor's or an insider's financial condition;
      (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
      (iv) that the debtor caused to be made or published with intent to deceive;

           \* \* \*

  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

           \* \* \*

  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

§ 523(a)(2), (4) and (6), Bankruptcy Code.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1985). In ruling on a motion for summary judgment, a court should believe the evidence of the non-movant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the present case, the plaintiff relies on the preclusive effect of the state court judgment to establish the grounds of non-dischargeability. Although the Supreme Court has held that res judicata, or claim preclusion, does not apply to dischargeability litigation, *see Brown v. Felsen*, 442 U.S. 127, 99 S.Ct 2205, 60 L.Ed.2d 767 (1979), collateral estoppel, or issue preclusion, does. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991). Briefly stated, collateral estoppel bars relitigation of an issue decided adversely to a litigant in a previous action if the issue was actually litigated in the previous action and was essential to the judgment. 3 Moore's Manual, § 30.01 (James Wm. Moore, Alan D. Vestal, and Philip B. Kurland, eds., 1999). As the Supreme Court has explained, "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 438 U.S. 322, 327, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

In determining whether a state court judgment is entitled to collateral estoppel effect in dischargeability litigation, a bankruptcy court applies the preclusion law of the forum in which the judgment was entered. *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 624 (4th Cir. 1995). The Fourth Circuit has explained that under Virginia law, the application of collateral estoppel requires the moving party to establish five elements. *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006). First, the parties to the two proceedings must be the same or in privity. *Id.* Second, the prior action must have resulted in a valid and final judgment against the party against whom preclusion is sought, or his privy. *Id.* Third, the factual issue to be precluded must have been actually litigated in the prior proceeding. *Id.* Fourth, the factual issue to be precluded must have been essential to the judgment in the prior proceeding. *Id.*

5

Lastly, there must be mutuality, such that the party to be precluded would have been bound had the prior litigation reached the opposite result. *Id.*

### III.

The three counts on which the state court entered summary judgment against the debtors were breach of contract, fraud, and conversion. The judgment for breach of contract is conclusive on the issue of the plaintiff's right to rescind the contract and his right to a return of the $100,000 deposit, but does not by itself establish that the debt is nondischargeable.

### A.

Whether the judgment for conversion has that effect is a closer question. The plaintiff's theory is that the judgment for conversion satisfies two grounds for nondischargeability: the exception in § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and the exception in § 523(a)(6) for willful and malicious injury.

With respect to the latter, § 523(a)(6) excludes from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." As the Supreme Court has explained, for the debtor's conduct to be "willful" within the meaning of the statute, he or she must have intended the consequences of the act, and not merely the act itself. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). As a result, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id*. at 64, 118 S.Ct. at 978. A "malicious" injury, however, does not necessarily require a showing of ill-will; it is sufficient that the act was done "deliberately and intentionally in knowing disregard of the rights of another." *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985). Conversion can constitute a willful and malicious

6

injury to property for the purpose of § 523(a)(6). *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331-332, 55 S.Ct. 151, 153, 79 L.Ed 393 (1934) (decided under former Bankruptcy Act of 1898); *Harmon v. Scott (In re Scott)*, 203 B.R. 590, 598 (Bankr. E.D. Va. 1996); *Richmond Metropolitan Hosp. v. Hazelwood (In re Haselwood)*, 43 B.R. 208, 213 (Bankr. E.D. Va. 1984). As the Supreme Court has cautioned, however,

> [A] willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one.

*Davis*, 239 U.S. at 332, 55 S.Ct. at 153 (internal citations omitted). For that reason, the state court judgment for conversion, standing alone, is not sufficient to establish that the debtors' liability is excepted from discharge as a willful and malicious injury. Nor is the fact that the state court awarded punitive damages sufficient to carry the day. *See Duncan v. Duncan (In re Duncan)*, 448 F.3d 725 (4th Cir. 2006) (holding that district court erred in granting summary judgment of nondischargeability against debtor under § 523(a)(6) based on collateral estoppel effect of state court wrongful death judgment, as under state law neither the judgment nor the award of punitive damages required an actual intent to injure but could be satisfied by merely reckless conduct).

As an alternative, the plaintiff argues that the judgment for conversion is sufficient to establish that the debt falls within the discharge exception for fiduciary fraud or defalcation, embezzlement, or larceny. Although the plaintiff's argument focuses on embezzlement, the court believes the more accurate characterization would be fiduciary defalcation. In light of the Fourth Circuit's recent decision in *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493

(4th Cir. 2008), it seems clear that failure by an escrow agent to account for funds deposited with him under a written agreement calling for their segregation would constitute a fiduciary defalcation. In *Strack*, the president of a farming equipment dealer had not complied with a provision of a floor plan financing agreement requiring the dealership to segregate the proceeds of sale of the floor-planned equipment and to hold them in trust for the manufacturer and instead had used the funds to pay other business expenses. On those facts, the Fourth Circuit held that the resulting liability was excepted from discharge under § 523(a)(4) as a fiduciary defalcation. Importantly, the Fourth Circuit noted that "defalcation" does not require that the act "rise to the level of . . . 'embezzlement' or even 'misappropriation'" but could be satisfied by "[N]egligence or even an innocent mistake which results in . . . [the] failure to account[.]" *Strack*, 524 F.3d at 498, n.7 (alterations in original). Given that the contract here expressly required the $100,000 deposit to be held by FSC "in escrow until settlement," the deposit of the funds instead into a personal account and the spending of the funds by the debtors for their own expenses is sufficient to render the resulting liability for failure to return the funds nondischargeable as a fiduciary defalcation.

B.

But even if the debt were not excepted from discharge as a fiduciary defalcation, the state court judgment for fraud would sufficiently establish the nondischargeability of the debt under the exception in § 523(a)(2)(A), Bankruptcy Code, for debts "for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The state court complaint alleged that the debtors made a number of false statements to induce the plaintiff to execute the sales

8

contract and deposit the $100,000 earnest money deposit with them. These included representations that the debtors "maintained an operating escrow account" and that they "would keep the $100,000.00 earnest money deposit in a separate escrow account and could return the $100,000.00 earnest money deposit to [the plaintiff]." Complaint ¶ 28. The complaint further alleged that the debtors made the representations with either knowledge of their falsity or reckless disregard for the truth and with the intent to deceive and defraud the plaintiff. Complaint ¶ 29. Finally, the complaint alleged that the plaintiff "reasonably and justifiably relied upon [the] misrepresentations" in depositing the funds with the debtors." The state court judgment conclusively establishes the truth of these allegations for the purpose of the present litigation. Accordingly, the court determines that the judgment is independently excluded from discharge under § 523(a)(2)(A).

C.

Some brief comment is appropriate with respect to the debtors' argument that the debt should be determined to be nondischargeable, if at all, only with respect to Mr. Kim and not Mrs. Kim. At the hearing the dealer asserted that Mr. Kim owned and ran the business and that Mrs. Kim had no active involvement with it. It is certainly undisputed that only Mr. Kim signed the sales agreement, and it does not appear that Mrs. Kim participated in the actual negotiations. Additionally, Mr. Kim provides some evidence that a business operated under the name of "Future Space Creation Company" is owned only by him. The difficulty is that while "FSC Consulting Co." has a name derivative of Future Space Creation Company, the names are not identical, and the latter is not registered as a business broker but as a construction or remodeling firm. Thus, the court would be hard-pressed, based solely on the documents provided by Mr.

Kim, to find that the two enterprises were the same.  More to the point, the state court, by its judgment, expressly found that Mrs. Kim was liable not only for the breach of contract, but also for the conversion of the deposit and the fraud that induced the plaintiff to enter into the contract.  If that finding was erroneous, the error must be corrected by the state court, as this court is required to give full faith and credit to the judgments of state courts.  28 U.S.C. § 1738.

## Conclusion

For the reasons stated, the court determines that the state court judgment has preclusive effect with respect to the issues necessary to a determination that the underlying debt is excepted from discharge on the grounds of fraud and fiduciary defalcation.  The judgment does not, however, establish all of the elements necessary to a determination of dischargeability on the ground of willful and malicious injury.  A separate order will be entered consistent with this opinion granting the motion for summary judgment and determining that the state court judgment is excepted from discharge under §§ 523(a)(2) and (4).

Date: _____                _____
                                             Stephen S. Mitchell
Alexandria, Virginia                         United States Bankruptcy Judge

Copies to:

Jeffrey S. Romanick, Esquire
Gross & Romanick, P.C.
3975 University Dr. #410
Fairfax, VA 22030-2520
Counsel for the plaintiff

Heungkee Kim
Juyang L. Kim
12306 Mulberry Ct.
Woodbridge, VA 22192

Defendants *pro se*